IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-21 |
| | : | |
| CHRISTOPHER LARUE | : | |

SENTENCING MEMORANDUM OF DEFENDANT CHRISTOPHER LARUE

I. **INTRODUCTION**

Defendant Christopher LaRue, by and through his attorney, Brian J. Zeiger, Esquire, hereby submits this Memorandum in mitigation of his sentence in this matter. Prior to the instant offense, Mr. Larue had a previous conviction for a similar offense. Further, Mr. LaRue has a long history of mental illness including multiple suicide attempts through his life. Before the instant matter, Mr. LaRue lived happily with Ms. Jennifer Mihalyak. She provided him with stability and this matter has deeply affected her. Although Mr. LaRue committed these heinous acts, he is a good man, and begs for mercy.

This was a "B" plea for 25 years plus one day. Accordingly, both parties will argue for 25 years plus one day in their sentencing memorandums; this Honorable Court has the ultimate decision regarding Mr. LaRue's sentence. The Sentencing Guidelines recommend a term of imprisonment of 370 to 387 months, so the Defendant submits the instant memorandum to show mitigation to this Honorable Court. The defense submits a motion for a downward departure pursuant to U.S.S.G. §§ 5H1.3 and 5K2.0(a)(4). In the alternative, the defense additionally requests a downward variance, pursuant to 18 U.S.C. § 3553(a), from the Guidelines sentencing recommendation. The defense requests that this Court sentence Mr. LaRue to the joint recommendation of 25 years plus one day. Mr. LaRue is 44 years old, and with a sentence of 25

years, he will be in his late 60s before he has any chance of freedom. A 25 year sentence is a sufficient punishment for his crimes, but not a period greater than necessary to serve the traditional goals of sentencing.

## II. RELEVANT FACTS

### A. Mr. LaRue's Personal Background.

Mr. LaRue was born in Abington, Pennsylvania. His parents separated when he was five years old due his father's alcoholism and domestic abuse. He has one biological sister, and two step brothers. One of his stepbrothers committed suicide at the age of 30.

At the time of the instant matter, Mr. LaRue was residing with his significant other, Jennifer Mihalyak. Ms. Mihalyak reports they had an caring, loving, and supportive relationship until Mr. LaRue's mental health condition worsened.

Mr. LaRue has a significant history of mental health issues. He first reported symptons of depression when he was approximately five years old, and he was diagnosed with manic depression at the age of 14. He reports he attempted to kill himself on multiple occasions:

- At the age of five, due to his parents separation, he tried to hang himself from a pole, but the pole broke.
- At the age of 18, he took sleeping pills, but his then girlfriend intervened.
- In 2007, he again took sleeping pills, when he learned his girlfriend was pregnant by another man.
- In 2007, at the time of his first armed robbery case, he hoped the police would kill him when he was captured.
- In 2020, when he learned his brother had committed suicide, he ingested 25-35 Ativan.

2

- In the matter at bar, he hoped the trooper would kill him when he was captured.

Remarkably, when he was released from federal prison on June 22, 2018, he underwent a psychiatric evaltion to determine whether he needed treatment. Somehow, the evaluation determined Mr. LaRue was not in need of treatment. Mr. LaRue attempted to get himself treatment. He was enrolled in Rehab After Work. We was later committed to Norristown State Hospital on a 302. After his release he continued his follow-up with Daystar Counseling. However, Mr. LaRue stopped his treatment during Covid-19, and did not attend virtually as required.

B. **Background of the Offense.**

On October 19, 2020, Mr. LaRue robbed the QNB Bank in the Eastern District of Pennsylvania. He brandished a firearm during the robbery. Included in the money Mr. LaRue stole were two GPS tracking devices.

The Pennsylvania State Police tracked the GPS devices to Mr. LaRue's place of work and were able to effectuate his arrest.

During the arrest, Mr. LaRue attempted to kill himself—again. The trooper believed Mr. LaRue was attempting to kill him. Mr. LaRue does not dispute the trooper's version of the events in anyway. Mr. LaRue agrees and accepts full responsibility for the trooper's assertion that Mr. LaRue was trying to kill him. However, Mr. LaRue, reiterates to the Court he was trying to kill himself and never intended harm the trooper. In other words, Mr. LaRue's position is that both he and the trooper are being truthful: the trooper is being truthful that he believed Mr. LaRue was attempting to kill him and Mr. LaRue is being truthful that he was hopeful the trooper would kill him if Mr. LaRue pulled the firearm.

Mr. LaRue accepts full responsibility for all of the conduct related to this offense and

conviction.

    **C. Procedural History.**

On January 28, 2021, Mr. LaRue was indicted by a federal grand jury sitting in the Eastern District of Pennsylvania. He was charged with one count of armed bank robbery and one count of brandishing a firearm during a crime of violence. Mr. LaRue pled guilty on October 4, 2021, before Your Honor.

Mr. LaRue and the U.S. Attorney's Office entered into a written plea agreement. The agreement was a "B" plea, for a joint recommendation of 25 years plus one day. Therefore, the Court is not bound by the joint recommendation and the Defendant will not be permitted to withdraw his plea if the Court does not follow the joint recommendation.

Based on an offense level of 25 and criminal history of III, the guideline range is 70 to 87 months. However, Count 2 has a consecutive mandatory minimum of 25 years. Thereby the adjusted range is 370 to 387.

## III. SENTENCING FLEXIBILITY IN THE POST-*BOOKER* ERA

    **A. The Advisory Sentencing Guidelines.**

On January 12, 2005, the United States Supreme Court ruled that its holdings in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) applied to the U.S. Sentencing Guidelines and, therefore, the Sentencing Guidelines violated the Sixth Amendment of the United States Constitution. *United States v. Booker*, 543 U.S. 220, 244 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statute in *Blakely* and the sentences imposed pursuant to the federal sentencing guidelines" in the cases before the Court. *Id.* at 235. Accordingly, reaffirming its holding in *Apprendi*, the Court concluded that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the

4

maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 244.

Significantly, based on this conclusion, the Court further found that those provisions of the Federal Sentencing Reform Act of 1984 which make the Guidelines mandatory, that is, 18 U.S.C. §3553(b)(1), or which rely upon the Guidelines' mandatory nature, that is, 18 U.S.C. § 3742(e), are incompatible with its Sixth Amendment holding. *Booker*, 543 U.S. at 244. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." *Id.* at 245. Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by *Booker*, "requires a sentencing court to consider Guidelines ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well" as articulated in 18 U.S.C. §3553(a). *Booker*, 543 U.S. at 245-46 (citations omitted). Thus, under *Booker*, sentencing courts must treat the Guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. §3553(a). *United States v. Coleman*, 451 F.3d 154, 158 (3d Cir. 2006)("[T]he Guidelines' recommended range may be modified or disregarded by a district court upon consideration of the other sentencing factors Congress has identified in §3553(a)").

In the Third Circuit, district courts considering the appropriate sentence for a criminal defendant must "follow a three-step sentencing process:"

> 1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*;
>
> 2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guideline calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force;
>
> 3) Finally, they are required to exercise their discretion by considering the relevant §3553(a) factors…in setting the

>sentence they impose regardless [of] whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)(citations omitted). Thus, in the critical third *Gunter* step, the district courts must apply their own independent judgment to the sentence to be imposed in light of the sentencing factors, whether or not that judgment results in a sentence within the advisory range. In fact, the district court must give "meaningful consideration to the section 3553(a)(2) factors" and impose sentence for reasons that are logical and consistent with those factors; however, the Third Circuit has rejected any presumption that sentences should be imposed within guideline range. *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006).

### B. Guidelines Sentences Are Not Presumptively Reasonable.

A sentence within the Sentencing Guidelines range for Mr. LaRue would be unreasonable because such a sentence would fail to appropriately consider the circumstances of the offense and Mr. LaRue's personal history and characteristics pursuant to 18 U.S.C. §3553(a). This Court is not bound by the Sentencing Guidelines and, instead, pursuant to 18 U.S.C. § 3553(a), has the authority to impose any sentence which is "sufficient, but not greater than necessary," to comply with the traditional goals of sentencing.

In *United States v. Rita*, the United States Supreme Court was faced with the question of whether Circuit Courts should adhere to a presumption of reasonableness when deciding, on direct appeal, whether a sentencing judge appropriately applied the guidelines. 551 U.S. 338 (2007). The Supreme Court held that, on appeal, Circuit Courts "*may* afford a presumption of reasonableness to a within-guidelines sentence." *Id.* at 346 (emphasis added). The Supreme Court clearly stated that such a discretionary presumption does not apply to sentencing courts. *Id.*

at 351. At the sentencing stage, after considering the Guidelines and the §3553(a) factors, the district court is free to decide that the statutory factors trump the Guidelines.[1]

In fact, the *Rita* decision clearly maintains that district courts, when imposing a sentence, do not have a subordinate role to the Commission, do not have to defer to the Commission's judgments and policy decisions, and can reach their own judgments regardless of whether they disagree with the commission's position. *Id.* at 351. The *Rita* Court states that, "[a]s far as the law is concerned, the [sentencing] judge could disregard the Guidelines." *Id.* at 353.

In every case, a sentencing court must now consider all of the §3553(a) factors, and not just the Sentencing Guidelines as set forth in §3553(a)(4)(A), to determine a sentence that is sufficient, but not greater than necessary, to meet the goals of sentencing. Where the guidelines conflict with other sentencing factors articulated in §3553(a), these other statutory sentencing factors should generally take priority over the Guidelines. *See United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part) (arguing that since §3553(a) requires a sentence to be no greater than necessary to meet the four purposes of sentencing, the imposition of a sentence greater than necessary to meet those purposes violated the statute and is reversible even if within the guideline range).

### C. The Directive And Factors Embodied In 18 U.S.C. § 3553(a).

The primary directive in 18 U.S.C. § 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2" of § 3553(a). Section 3553(a)(2) states that these purposes are:

> a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> b) to afford adequate deterrence to criminal conduct;

---

[1] The *Rita* Court also explained that a non-guidelines sentence will not be presumed to be unreasonable. *Rita* at *11.

      c) to protect the public from further crimes of the defendant; and,
      d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). Of course, these § 3553(a)(2) factors are simply a restatement of the traditional goals of sentencing: retribution, deterrence, the protection of society, and rehabilitation. These goals, formerly relegated to an afterthought by the U.S. Sentencing Commission, have been reinvigorated by the Supreme Court in *Booker*.

In determining a sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendants," s*ee* 18 U.S.C. § 3553(a)(1);
2) "the kinds of sentences available," s*ee* 18 U.S.C. § 3553(a)(3);
3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," s*ee* 18 U.S.C. § 3553(a)(6); and
4) "the need to provide restitution to any victims of the offense," s*ee* 18 U.S.C. § 3553(a)(7).

This is not an exhaustive list of the factors which the Court can consider. Indeed, pursuant to 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

In this case, this Court may nevertheless fashion a sentence that varies from the Guidelines and which is appropriate for Mr. LaRue so that it is sufficient, but not greater than necessary, to achieve the recognized goals of sentencing of retribution, deterrence, the protection of society, and rehabilitation.

**IV.  <u>DETERMINING AN APPROPRIATE SENTENCE FOR Mr. LaRUE</u>**

Pursuant to the Third Circuit's ruling in *United States v. Gunter*, at sentencing, district courts should (i) conduct a Sentencing Guidelines analysis, (ii) formally rule on the motions of both parties including requests for downward departures, and (iii) exercise the sentencing court's discretion by considering the relevant § 3553(a) factors to impose an appropriate sentence regardless of whether it varies from the sentence calculated under the Guidelines. 462 F.3d 237, 247 (3d Cir. 2006) (citations omitted).

### A. Motion for Downward Departure Pursuant to U.S.S.G. §§ 5H1.3, 5K2.0.

This Court should grant a downward departure from the sentence recommended by the Guidelines. A departure, as opposed to a variance, is a sentence adjustment that relies on grounds specified within the Guidelines themselves. *See Irizarry v. United States*, 553 U.S. 708, 714 (2008)(clarifying the distinction). Section 5K2.0(a)(4) permits downward "departures based on not ordinarily relevant offender characteristics" if the characteristic is "present to an exceptional degree." Mental and emotional conditions may form the basis for a departure if "present to an usual degree and distinguish the case from the typical cases covered by the guidelines." § 5H1.3. A court may also depart based on a relevant circumstance even if it is not mentioned specifically in the Guidelines if the court finds such a departure appropriate. § 5K2.0(a)(2)(B). A mental illness may be considered independently as relevant to a departure or in combination with another factor. *See* § 5H1.3. The Third Circuit has recognized that where a circumstance "falls outside the typical heartland, the court may consider a departure from the Guidelines sentence." *United States v. Iannone*, 184 F.3d 214, 226 (3d Cir. 1999).

This Court should grant Mr. LaRue a downward departure based upon one circumstance: Mr. LaRue's mental health issues. His mental health conditions are exceptional in that they interfere with his decision making faculties. This Court, under the authority of § 5K2.0(a)(2)(B)

should consider Mr. LaRue's mental health condition; a downward departure is warranted.

The combination of these circumstances renders Mr. LaRue's actions outside the heartland of an armed robbery case. In a Seventh Circuit case Judge Posner wrote that a defendant's "psychiatric problems and substance abuse may have made him far more susceptible to the informant's blandishments than the average person invited to commit serious crimes." *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005). Similarly, Mr. LaRue's psychiatric problems may have made him "far more susceptible" to commit these acts then the "average person." Although Mr. LaRue's willingness to commit the crimes was of his own free will and volition, the court should consider the collective effect of Mr. LaRue's mental health issues when forming a sentence.

**B. Request for a Variance Pursuant to 18 U.S.C. §3553(a).**

In the alternative, the Court should find that a downward variance to a sentence of 25 years plus one day is appropriate in consideration of the factors set forth in 18 U.S.C. § 3553(a). Since the Supreme Court's decisions in *Booker* and *Rita*, the Sentencing Guidelines are merely advisory; not mandatory or conclusive. In fact, the sentencing court must make its own determination as to what factors, if any, to consider when sentencing a criminal defendant. The *Rita* decision states that district courts, when imposing a sentence, do not have a subordinate role to the Commission, can reach their own conclusion as to the proper sentence in light of § 3553(a). *United States v. Rita*, 551 U.S. 338, 351 (2007).

1. Section 3553(a)(1): Circumstances of the Offense & Character of the Offender

The circumstances of the offense and Mr. LaRue's mental health issues and acceptance of responsibility support the imposition of a sentence below the advisory Sentencing Guidelines in this matter.

(a) *Nature and Circumstances of the Offense*

Pursuant to § 3553(a)(1), the nature and circumstances of the offense is a factor for consideration in sentencing. The commission of an armed robbery is a very serious offense. No one was injured at the time of the incident or at the time of the arrest. 25 years in custody for a person who is 44 years old, is more than sufficient to deter Mr. LaRue from doing this again. These circumstances weigh in favor of a sentence below the Guidelines.

(b) *Mr. LaRue's mental health issues*

The Sentencing Guidelines limit consideration of mental and emotional conditions to situations where they are "present to an usual degree." U.S.S.G. § 5H1.3. If this Court determines that Mr. LaRue's mental health conditions do not arise to the level contemplated by the Guidelines, this Court may still consider these issues. Following the Supreme Court's rulings in *Booker* and *Rita*, those factors now deserve independent consideration by this Court when sentencing Mr. LaRue. Indeed, the Court may determine that the Guidelines, and § 5H1.3 specifically, do not adequately account for Mr. LaRue's mental health issues.

Since pre-adolescence Mr. LaRue has suffered from significant mental health conditions. Multiple health professionals have concluded that Mr. LaRue has depression, anxiety, suicidal ideations, mood disorder, and adjustment disorder. Although depression dominates his mood much of the time, Mr. LaRue also experiences severe mood swings. Mr. LaRue has attempted to take his own life on at least five occasions.

(c) *Mr. LaRue's Acceptance of Responsibility*

Mr. LaRue has pled guilty to the instance offense and his acceptance of responsibility, coupled with the other factors discussed, provides persuasive grounds for a sentence below the Guidelines. By pleading guilty to all of the alleged conduct, Mr. LaRue spared the government

the time and expense of bringing his case to trial. He accepts that he must receive punishment for the crimes committed and deserves further leniency in Your Honor's sentence beyond the incremental reductions already provided by the Guidelines.

        2. <u>18 U.S.C. § 3553(a)(2): The Traditional Goals of Sentencing:</u>

The primary directive in § 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the" traditional goals of sentencing. The traditional goals of sentencing, as outlined in § 3553(a)(2), are punishment, deterrence, protection of society, and rehabilitation. Section 3553(a)(2) instructs that courts should consider what sentence is appropriate "to provide the defendant with needed . . . medical care . . . in the most effective manner." A sentence below the Guideline range for Mr. LaRue will serve the traditional goals of sentencing as well as permit him more time to receive proper care for her serious mental health issues, a vital component of her rehabilitation.

First, 25 years of incarceration is a significant punishment anyone for any crime. Incarceration for this length of time will be meaningful punishment, aggravated by separation from society for the better part of his life.

Further, the risk of recidivism drops dramatically as defendants get older, lessening the need to protect the public from further crimes of the defendant under §3553(a)(2)(C). (*See* United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines at 12, *available at* www.ussc.gov/publicat/recidivism_general.pdf). A sentence of 25 years is a significant deterrent to the community. Mr. Larue, in his late 60s will not be a danger to society due to his age. A term of imprisonment of 25 years is a long enough period of time to deter future illegal conduct pursuant to § 3553(a)(2)(B).

A sentence below the Statutory Guidelines will be sufficient, but not greater than necessary, to promote the goals of sentencing.

## V. MISCELLANEOUS SENTENCING ISSUES

Mr. LaRue has asked counsel to reiterate to Your Honor that he accepts full responsibility for all of his actions, including the portion of the case involving the state trooper. He does not dispute in any way that the trooper had a reasonable belief that Mr. LaRue was attempting to kill him. **Mr. LaRue agrees with all of the facts laid out by the trooper and the government.** Mr. LaRue, however, wants the Court to know his intent, that he was attempting to commit suicide at the time.

## VI. CONCLUSION

For all of the foregoing reasons, Mr. LaRue submits that the appropriate sentence in this matter is 25 years plus one day.  In asking for a departure and a variance from the Guidelines, Mr. LaRue is mindful of the serious nature of these charges and does not intend by these arguments to diminish the severity of her criminal conduct.  Imposing the requested sentence, however, would nevertheless serve the interests of the public while still accounting for Mr. LaRue's significant mental health issues, his acceptance of responsibility, and his age at the end of the sentence.  In urging this sentence, Mr. LaRue is placing himself at the mercy of this Court and respectfully requests that it consider the foregoing analysis and discussion in mitigation of sentence.

    Respectfully submitted,

    /s/ BRIAN J. ZEIGER, ESQUIRE
    BRIAN J. ZEIGER, ESQUIRE
    LEVIN & ZEIGER LLP
    1500 JFK BLVD
    SUITE 620

PHILADELPHIA, PA 19102  
215.546.0340  
zeiger@levinzeiger.com  
ATTORNEY ID NO.: 87063  
COUNSEL FOR PLAINTIFFS


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Defendant's Sentencing Memorandum has been served via email to:

Michelle Morgan, Esquire, AUSA
Assistant United States Attorney

                                        Respectfully Submitted

Dated: March 11, 2022                  s/ Brian J. Zeiger, Esquire
                                              Brian J. Zeiger, Esquire
                                              Levin & Zeiger LLP
                                              Identification No.: 87063
                                              1500 JFK Blvd Suite 620
                                              Philadelphia, PA 19102
                                              215-546-0340